UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **HENNA CARDENAS**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**RESORT SALES BY SPINNAKER, INC.**, a South Carolina Corporation, and **RESORT SALES MISSOURI, INC.**, a Missouri Corporation,<br><br>*Defendants*. | Case No. 9:20-cv-00376-RMG |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## I.   INTRODUCTION

This is a TCPA case where the defendant keeps changing its argument with respect to who may be liable for the calls at issue. Following dismissal of her second complaint in a prior lawsuit against Spinnaker Resorts, Inc. ("Spinnaker")—a dismissal that that found Spinnaker could not be held liable for the actions of its subsidiaries that made the calls at issue—Plaintiff Henna Cardenas ("Plaintiff" or "Cardenas") filed the present action against Spinnaker's subsidiaries: Defendants Resort Sales by Spinnaker, Inc. ("RSS") and Resort Sales Missouri, Inc. ("RSM") (collectively "Defendants"). Neither subsidiary was part of the prior lawsuit. Rather, this case marks the first time that Plaintiff has brought claims against the instant Defendant subsidiaries directly for the calls. To date, no court has addressed whether Defendants are ultimately liable for the calls in question.

Notwithstanding this, Defendants argue that issue preclusion prevents Plaintiff from

alleging in this case that RSS and RSM made the calls in question and that her complaint should be dismissed. Defendants' arguments are without merit. Collateral estoppel does not preclude Plaintiff's allegations because the issue of Defendants' liability for the calls was not actually resolved or necessary to the judgment in either of the prior actions. Further, in ruling on Plaintiff's motion to reconsider, the Court expressly clarified that dismissal of Plaintiff's second complaint did <u>not</u> preclude her from pursuing claims against RSS and RSM as new parties in a new lawsuit. Finally, the calls alleged by Plaintiff that were received *after* her first complaint was filed are obviously not subject to issue preclusion. Accordingly, Defendants' motion to dismiss should be denied, and the Court should permit this matter to proceed with discovery and class certification.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendants' parent company, Spinnaker, is a real estate company that owns and sells timeshares. (Declaration of Basil Matthews ("Matthews Decl.") ¶ 7, a true and accurate copy of which is attached hereto as Ex. A.) Spinnaker's timeshares are marketed to customers through telemarketing campaigns, and according to Spinnaker's Comptroller, "[a]ll telemarketing activities directed to potential customers are conducted by Spinnaker's subsidiary corporations, [RSM] or [RSS], or independent telemarketing companies they hire." (*Id.* ¶ 8.)

In Plaintiff Cardenas' case, in or around April 2015, Plaintiff—who had already registered her landline phone on the Do Not Call Registry—began receiving multiple calls during the day on her landline telephone from various telephone numbers. (Compl., Dkt. 1, at ¶ 26.) Over the course of several years, Plaintiff received many telemarketing calls from a variety of different numbers, all of which identified themselves as "Spinnaker Resorts." (*Id.* ¶¶ 26–54.) These include calls made on June 29, 2017, June 30, 2017, July 3, 2017, July 15, 2017, July 17,

2

2017, and July 24, 2017 from the phone number 908-428-4405, which occurred after she filed her first complaint against Spinnaker in New Jersey. (*Id.* ¶ 54.)

***Plaintiff's New Jersey Complaint Against Spinnaker***

On May 2, 2016, Cardenas filed a complaint against Spinnaker in the District of New Jersey. *See Cardenas v. Spinnaker Resorts, Inc.*, Civil Action No. 16-2466 (JLL), 2017 WL 3315285, at *1, *6 (D. N.J. Aug. 3, 2017) [hereafter "*N.J. Dismissal*"]. On July 8, 2016, Spinnaker moved to dismiss arguing that it lacked sufficient minimum contacts with New Jersey and that it did not engage in any telemarketing itself (rather, its agents or its contractors made the calls). *Id.* at *1. Following briefing, the Court ordered the Parties on August 3, 2016, to engage in jurisdictional discovery limited to Spinnaker's relationship with the two subsidiaries it claimed made phone calls and engaged in telemarketing, in order to determine whether the subsidiaries could be considered Spinnaker's agents for jurisdictional purposes. *Id.*

Following jurisdictional discovery, Defendant renewed its motion to dismiss, and the District of New Jersey dismissed the complaint on the basis that it lacked personal jurisdiction over Spinnaker. *N.J. Dismissal*, 2017 WL 3315285, at *2, *6. The Court focused its analysis on specific personal jurisdiction and agency, including a detailed assessment of the factors "[t]o determine if a subsidiary is acting as an agent of a parent." *Id.* at *5. The Court concluded that agency did not exist between Spinnaker and its subsidiaries that would impute liability to Spinnaker. *Id.* at *6.

As an additional consideration, the Court noted that even if agency had been established, Plaintiff "failed to allege" that subsidiaries made the calls that gave rise to the action because the complaint "clearly attribute[d] the telephone calls to Defendant [Spinnaker], not to its subsidiaries." *Id.* The Court noted that RSS and RSM denied making the calls in a declaration

3

and that "Plaintiff failed to show that the [subsidiaries] made the alleged phone calls," but it did not make any findings as to whether RSS and RSM were actually responsible for the calls. *Id.*

### *Plaintiff's South Carolina Complaint Against Spinnaker*

On March 20, 2018, Plaintiff filed a new action against Spinnaker in the District of South Carolina. *See Cardenas v. Spinnaker Resorts, Inc.*, Civil Action No. 9:18-761-BHH, 2019 WL 7761751, at *1 (D. S.C. Mar. 5, 2019) [hereafter "*S.C. Dismissal*"]. Defendant moved to dismiss Plaintiff's complaint, arguing that the District of New Jersey's dismissal for lack of jurisdiction barred Plaintiff from alleging that Spinnaker was liable for the calls on the basis of issue preclusion. *Id.* at *3. The Court ultimately agreed with Spinnaker and granted the motion on March 5, 2019. *Id.* at *1, *6. The Court determined that Cardenas could no longer litigate whether Spinnaker itself made the calls—and thus that the New Jersey findings warranted dismissal of the second complaint "at least as it currently stands." *Id.* at *5. However, the Court went even further, concluding that Plaintiff was "precluded from asserting that Defendant itself made the alleged calls *or that the Resort Sales Companies* [RSM and RSS] *made the alleged calls*." *Id.* at *5.

### *Plaintiff's Motion to Reconsider*

Following the Court's order of dismissal, Plaintiff filed a motion to reconsider, asking only that the Court reconsider its secondary conclusion that Cardenas was precluded from bringing claims against Defendants RSS and RSM for the calls. *Cardenas v. Spinnaker Resorts, Inc.*, Civil Action No. 9:18-761-BHH, 2019 WL 7761707, at *1 (D. S.C. July 3, 2019) [hereafter "*S.C. Reconsideration*"]. The Court agreed with Plaintiff and clarified that its findings were limited to precluding Cardenas from bringing claims against Spinnaker for making the calls directly *or* as vicariously liable for calls made by the Defendants. *Id.* at *2. The

4

Court stated that because RSS and RSM were not parties to the New Jersey action, the Court's dismissal "should not be construed to preclude Plaintiff from pursuing relief" against the Defendants directly, or any potential third-party actors. *Id.* Thus the Court granted the motion to reconsider:

> Based on the foregoing, the Court hereby grants in part Plaintiff's Rule 59(e) motion as outlined above to clarify that its March 2019 findings refer only to Plaintiff's ability to proceed with the claims that she previously raised against Defendant Resort Sales, Inc., which was the only Defendant named in either the New Jersey action or this action. The Court further clarifies that its March 2019 findings *do not control Plaintiff's ability to pursue any potential claims against the Resort Sales Companies*, either directly for their actions or vicariously for the actions of some other unidentified third party or parties, as *neither the New Jersey court nor this Court specifically addressed the direct or vicarious liability of the Resort Sales Companies* (or others), which were *not parties to either action*.

*Id.* at *3 (emphasis added). The Court did not grant Plaintiff leave to amend her complaint to include the Defendants but instead stated that "to the extent Plaintiff wishes to pursue any potential claims not addressed by the Court's March 2019 order, she may do so by filing a new action." *Id.* Thereafter, Plaintiff filed this action on January 30, 2020. (Dkt. 1.)

### III.  ARGUMENT

#### A.  Plaintiff's Allegations That Defendants Made The Calls Are Not Precluded By Any Prior Action.

Like Spinnaker's motion to dismiss in the previous South Carolina action, Defendants ask the Court to dismiss Plaintiff's complaint on the basis that her claims against RSS and RSM are somehow precluded by the doctrine of issue preclusion, or collateral estoppel. While issue preclusion would perhaps be a defense had Spinnaker itself been named in this case on a theory of agency or vicarious liability, it offers no relief to the Defendants. As explained below, the elements of collateral estoppel are not met here, as the issue of whether RSS and RSM made calls to Plaintiff was not actually resolved, fully litigated, or necessary to either of the previous

5

dismissals issued in the cases brought against Spinnaker. Further, the Court expressly clarified in the previous action that its dismissal was not intended to preclude Plaintiff from filing a new action against the subsidiaries (the instant Defendants). Because she has brought claims against the Defendants under a different legal theory, none of the calls made to Plaintiff, including those that occurred after she filed her first complaint in New Jersey, are subject to issue preclusion. Accordingly, the Court should reject Defendants' argument for collateral estoppel and deny the motion to dismiss Plaintiff's complaint.

### 1.     The elements for applying collateral estoppel are not met.

Defendants' arguments for the application of collateral estoppel to Plaintiff's claims are unfounded. Collateral estoppel, also known as issue preclusion, prevents the relitigation of factual or legal issues "that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (quoting *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir.1994)) (alterations in original). The proponent of issue preclusion must establish the presence of five elements:

> (1) the issue sought to be precluded is identical to one previously litigated;
> (2) the issue must have been actually determined in the prior proceeding;
> (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;
> (4) the prior judgment must be final and valid; and
> (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Id.*; *Malm v. Gonzales*, 151 F. App'x 252, 256 (4th Cir. 2005).

Here, the only element that is actually satisfied is that the prior judgments of the District of New Jersey and District of South Carolina are final and valid. As to the remaining four

6

elements, however, Defendants fall far short of meeting their burden, and the Court should refuse to apply collateral estoppel to Plaintiff's new claims in this new lawsuit against these previously unnamed Defendants.

First, the issue sought to be precluded is not identical to one previously litigated. Defendants seek to preclude Plaintiff from alleging that "the Resort Sales Companies [RSS and RSM] made unsolicited calls to Plaintiff." (Memo. In Supp. of Def. Mot. to Dismiss, Dkt. 15-1, at 9.) Prior to the present action, Plaintiff had proceeded only against Spinnaker, the Defendants' parent company, on a theory of agency or vicarious liability. She did not previously allege that Defendants made the calls to her or that they were directly liable for such calls. Indeed, the New Jersey court pointed out as much in its order of dismissal, noting that because Plaintiff "clearly attribute[d] the telephone calls to Defendant [Spinnaker], not to its subsidiaries," she had not alleged that RSS or RSM specifically were responsible or liable for the calls. *N.J. Dismissal*, 2017 WL 3315285, at *6. After her initial complaint was dismissed for lack of jurisdiction, her second complaint—the first complaint she filed in the District of South Carolina—was similarly brought against Spinnaker, not its subsidiaries. *See S.C. Dismissal*, 2019 WL 7761751, at *1. Thus, Defendants' assertion that Plaintiff is alleging, "for a third time, that the Resort Sales Companies made unsolicited calls to Plaintiff" is simply untrue. (Dkt. 15-1, at 9.) This is Plaintiff's first attempt to litigate the issue of whether RSS and RSM are liable for the telemarketing calls made to Plaintiff.

As for the second element, the issue of Defendants' liability was not "actually determined" in any prior proceeding. As an alternative to concluding that Spinnaker was not liable under theories of agency or vicarious liability, the District of New Jersey noted that RSS and RSM denied making the calls and found that Plaintiff did not make a sufficient showing

7

that the subsidiaries made the phone calls to Cardenas. *N.J. Dismissal*, 2017 WL 3315285, at *6. Notably, the Court *did not* make any findings as to whether the subsidiaries (here, the Defendants) were actually responsible for the calls, either by making the calls directly or through a third party, even in light of the declaration from Spinnaker's Comptroller that all telemarketing activities are conducted by RSM and RSS, or the telemarketing companies they hire. *See id.*; (Ex. A at ¶ 8.) Thus, the issue of Defendants' potential liability was not actually determined in a prior proceeding.

Likewise, the fifth element is not satisfied either. Plaintiff did not have a full opportunity to litigate the issue of Defendants' liability in any prior case. Once again, the New Jersey dismissal was based on a lack of jurisdiction over Spinnaker, as the court found that Spinnaker could not be held liable for the calls under a theory of agency or vicarious liability. *N.J. Dismissal*, 2017 WL 3315285, at *2, *5. The court's analysis was based primarily on the requirements for agency, which it found were not met. *Id.* at *5. Further, the jurisdictional discovery that preceded dismissal was limited to Spinnaker's relationship with RSS and RSM to determine whether they could be considered agents for jurisdictional purposes—this was not an opportunity to pursue discovery related to the nature of the calls and how they were made. *See id.* at *1. Similarly, the liability of Defendants was not litigated in the previous District of South Carolina case, as the Court dismissed on the basis of issue preclusion and no additional discovery was conducted. *S.C. Dismissal*, 2019 WL 7761751, at *1, *6. In short, Plaintiff has not yet had an opportunity to litigate whether RSS and/or RSM made the calls in question or whether they may be held directly liable for such calls.

Finally, the third factor is not satisfied because determination of Defendants' liability and involvement in the calls was not critical or necessary to any prior judgment. Defendants

8

contend that whether they made the calls was a "crucial lynchpin" in the District of New Jersey's dismissal. (Dkt. 15-1, at 3.) Plaintiff respectfully disagrees. The District of New Jersey focused its analysis on the question of agency—whether the subsidiaries acted as agents of Spinnaker such that the New Jersey court could exercise specific personal jurisdiction over Spinnaker. *N.J. Dismissal*, 2017 WL 3315285, at *4–6. It ultimately dismissed Plaintiff's complaint because "[t]he Court is not satisfied with Plaintiff's argument that agency exists between the Resort Sales Companies and [Spinnaker] and thus will not impute the former's contacts with New Jersey to the latter." *Id.* at *6. The court also determined that Plaintiff had "failed to allege" that the subsidiaries made the calls, but this consideration was secondary to the analysis of agency, and it was not necessary to the dismissal. *See id.* at *5, *6. In other words, even if Plaintiff were allowed to conduct fact discovery on the calls (she was not) and had been able at that time to show that RSS and RSM made the calls, the court would have still dismissed as to Spinnaker because it did not agree with Plaintiff's agency arguments. The issue of Defendants' involvement in the calls was not critical or necessary to the prior court's judgment, which is why it was not fully litigated.

The majority of the elements required for the application of collateral estoppel remain unsatisfied. Plaintiff's prior claims against Spinnaker were dismissed for lack of agency and personal jurisdiction—her new claims are against Defendants RSS and RSM directly, and they do not implicate the issues of agency that were previously litigated. Accordingly, Plaintiff should not be precluded from alleging that Defendants are directly liable for the calls made to Plaintiff, and the Court should deny the motion to dismiss.

> **2.     The Court expressly clarified in its July 2019 Order that Plaintiff was not precluded from filing a new action against Defendants.**

In addition to the fact that the general elements of issue preclusion do not support

9

application in this case, Plaintiff's complaint and allegations against RSS and RSM were explicitly authorized by the District of South Carolina following Plaintiff's motion to reconsider. In light of this authorization, the case for collateral estoppel is even weaker.

When the Court dismissed Plaintiff's second complaint against Spinnaker (and first complaint in the District of South Carolina), it did so on the basis of issue preclusion—the Court initially ordered that the New Jersey dismissal "precluded [Plaintiff] from asserting that [Spinnaker] made the alleged calls *or that the Resort Sales Companies made the alleged calls*." *S.C. Dismissal*, 2019 WL 7761751, at *5 (emphasis added). Believing that the Court went too far with the preclusive effect of the prior judgment, Plaintiff moved for reconsideration, specifically of the finding that she was precluded from bringing claims against the Resort Sales Companies, or Defendants RSS and RSM. *S.C. Reconsideration*, 2019 WL 7761707, at *1.

The Court granted the motion to reconsider and clarified that it intended only to preclude Plaintiff from bringing claims against Spinnaker for either making the calls itself, or as vicariously liable for calls made by RSS and RSM. *Id.* at *2. The Court recognized that claims brought directly against Spinnaker's subsidiaries would be "entirely new legal theories," not subject to collateral estoppel. *See id.* This is why the Court denied Plaintiff's bid to simply amend her complaint and add the Defendants but instead provided that she could file a new complaint:

> [T]he Court believes it would be unfair to permit Plaintiff to amend this action at this time to present *entirely new legal theories* regarding the potential direct or vicarious liability of the Resorts Sales Companies (or others), who have *never been parties to this action* (or to the New Jersey action, for that matter). Rather, if Plaintiff wishes to pursue these new claims against new parties, then *she may file a new action doing so*.
>
> Based on the foregoing, the Court hereby grants in part Plaintiff's Rule 59(e) motion as outlined above to clarify that its March 2019 findings refer only to

10

> Plaintiff's ability to proceed with the claims that she previously raised against [Spinnaker], which was the only Defendant named in either the New Jersey action or this action. The Court further clarifies that its March 2019 findings do not control Plaintiff's ability to pursue any potential claims against the Resort Sales Companies, either directly for their actions or vicariously for the actions of some other unidentified third party or parties, as *neither the New Jersey court nor this Court specifically addressed the direct or vicarious liability of the Resort Sales Companies (or others), which were not parties to either action*.

*Id.* at *2–3. Thus, and as instructed by the Court, Plaintiff filed her new complaint in the present action, asserting "new claims against new Defendants." *Id.* at *3.

Despite this express clarification from the Court, Defendants are attempting to re-extend the preclusive effect of the New Jersey dismissal to cover claims against themselves, even though the issues previously addressed related to agency and vicarious liability of Spinnaker. Defendants have no real basis to support their assertion that Cardenas should be collaterally estopped from bringing claims against them, aside from the mistaken belief that a prior dismissal of claims against their parent corporation should shut Plaintiff out of court completely. The fact remains that someone claiming to be "Spinnaker Resorts" placed unlawful calls to Plaintiff for over two years, including after she filed her first complaint, and Spinnaker's sworn declaration avers that the telemarketing calls are made by Defendants or the telemarketers they hire. (Ex. A at ¶ 8.) The potential liability of RSS and RSM has not been previously litigated or determined, at the very least discovery is needed on which third party vendor RSS and RSM used to make the calls, and the Court should deny Defendants' motion to dismiss.

### 3. Plaintiff's allegations of calls received after the filing of her first complaint are likewise not precluded.

At the close of their motion, Defendants briefly argue that the six additional calls included in Plaintiff's new complaint "do not preclude dismissal." (Dkt. 15-1 at 10.) In support,

11

Defendant points to a footnote in the District of South Carolina's order of clarification where the Court agreed with Spinnaker that even though these calls were made after the first New Jersey complaint was filed, they do not constitute "new evidence not previously available." (*Id.* at 11); *S.C. Reconsideration*, 2019 WL 7761707 at *1, n. 1.

However, what Defendants fail to recognize is that the Court granted relief in response to the motion for reconsideration in order "to correct a clear error of law or to prevent manifest injustice," not due to new evidence. *Id.* at *1. As outlined above, the Court clarified that Plaintiff was not precluded from bringing claims against Defendants RSS and RSM, either directly or vicariously through their agents, because "neither the New Jersey court nor this Court specifically addressed the direct or vicarious liability of the Resort Sales Companies (or others), which were not parties to either action." *Id.* at *3. This clarification is <u>not</u> limited to any particular calls that were alleged—Plaintiff may still bring her new claims against *Defendants* for the calls she received, including those received after the first complaint was filed, and the Court even provided that she could potentially bring new claims against *Spinnaker* for any additional calls that were not alleged in any prior complaint. *See id.*

Defendants' contention that the additional six calls were subsumed in the District of New Jersey's dismissal bears no weight here because the preclusive effect of such dismissal applies only to the issue of *Spinnaker's* liability for such calls and Plaintiff's prior theories of agency and vicarious liability. Plaintiff is not precluded from asserting that Defendants are liable for the calls that she received, and her complaint should not be dismissed.

## IV.  CONCLUSION

Defendant's motion to dismiss should be denied. The elements of collateral estoppel are not present in this case, and this Court expressly authorized Plaintiff to proceed with her new

12

theories of liability against Defendants rather than their parent corporation. Accordingly, the Court should deny the motion and permit this matter to proceed.

        Respectfully Submitted,

        **HENNA CARDENAS**, individually and on behalf of class of similarly situated individuals

Dated: April 22, 2020      By: \_\_\_/s/ Margaret A. Collins_____
                         One of Plaintiff's Attorneys

        Margaret A. Collins, Esquire,
        Attorney for Plaintiff
        P.S.L.G., LLC d/b/a Palmetto State Law Group, LLC
        1087B Harbor Drive
        West Columbia, SC 29169
        Office: (803) 708-7442
        PBX: (803) 251-9003
        Facsimile: (803) 753-9352

        Patrick Peluso (admitted *pro hac vice*)
        ppeluso@woodrowpeluso.com
        Woodrow & Peluso, LLC
        3900 E. Mexico Avenue, Suite 300
        Denver, CO 80210
        Phone: (720) 213-0675

        Stefan Coleman
        law@stefancoleman.com
        Law Offices of Stefan Coleman, P.A.
        201 South Biscayne Blvd., 28th Floor
        Miami, Florida 33131
        Tel: 877.333.9427
        Fax: 888.498.8946

**Certificate of Service**

I hereby certify that, on the date indicated below, the foregoing document (and any attachments or accompanying documents) was served via the Court's CM/ECF System on counsel for all parties who have appeared in this matter.

Dated:  April 22, 2020                    /s/ Margaret A. Collins