IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

|  |  |  |
|---|---|---|
| Henna Cardenas, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | C/A No.:  9:20-cv-00376-RMG |
| Plaintiff, | ) ) | **ORDER** |
| v. | ) ) ) | |
| Resort Sales by Spinnaker, Inc., a South Carolina Corporation, and Resort Sales Missouri, Inc., a Missouri Corporation | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on Defendants Resort Sales By Spinnaker, Inc. and Resort Sales Missouri, Inc.'s motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 15). For the reasons set forth below, Defendants' motion is denied.

**I.   Background**

Plaintiff brings this purported class action against Resort Sales by Spinnaker, Inc. ("RSS") and Resort Sales Missouri, Inc. ("RSM") (collectively "Defendants") alleging Defendants violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). (Dkt. No. 1). Plaintiff alleges Defendants made unsolicited telephone calls to the telephones of consumers nationwide who are registered on the National Do Not Call Registry. (*Id.* ¶ 2). Plaintiff is a resident of Warren, New Jersey. (*Id.* ¶ 6). According to Plaintiff's complaint, RSS is a South Carolina Corporation with a registered agent in Hilton Head, South

1

Carolina. RSM is a Missouri Corporation with headquarters in Hilton Head, South Carolina. (*Id.* ¶¶ 7–8). Plaintiff alleges Defendants aggressively market timeshare properties located in South Carolina, Missouri, and Florida. (*Id.* ¶ 1). Plaintiff alleges Defendants are wholly-owned subsidiaries of Spinnaker Resorts, Inc. ("Spinnaker") (*Id.* ¶ 13). Plaintiff alleges Spinnaker owns the resort timeshares that RSS and RSM market through telemarketing campaigns. (*Id.*)

Plaintiff alleges Defendants made and continue to make unsolicited telemarketing calls to consumers' residential landlines through their own efforts and their agents. (*Id.* ¶ 19). Plaintiff alleges Defendants and/or their agents placed repeated and unwanted calls to consumers whose numbers are registered on the National Do Not Call Registry. (*Id.* ¶ 17). According to Plaintiff, Defendants and/or their agents fail to process requests made by the called persons to not be called. (*Id.* ¶ 18). Plaintiff also alleges Defendants knowingly made and continue to make unsolicited telemarketing calls without the prior express consent of the call recipients. (*Id.* ¶ 20). Plaintiff brings two causes of actions in violation of the TCPA on behalf of herself and two classes of individuals.[1] (*Id.* ¶ 59).

---

[1] Plaintiff defines the classes as follows:

**No Consent DNC Class**: All persons in the United States from four years prior to the filing of this action through the present (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days, (2) who thereafter received more than one telephone call made by or on behalf of Defendants within a 12-month period, (3) for whom Defendants obtained prior express consent to call in the same manner as Defendants claim they obtained consent to call the Plaintiff, (4) where the equipment used to make the calls was the same equipment used to call the Plaintiff, and (5) where the purpose of the call was the same as the purpose of the calls made to Plaintiff.

**DNC Stop Calling Class**: All persons in the United States from four years prior to the filing of this action through the present (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendants within a 12-month period; (3) who were called for the same purpose Plaintiff was called; (4) who requested that Defendants not call them again, and (5)

Prior to this action, Plaintiff filed two similar proposed class actions alleging violations of the TCPA against Spinnaker. The first action was filed in the United States District Court for the District of New Jersey. *See Cardenas v. Spinnaker Resorts, Inc.*, No. 2:16-2466 (JLL), 2017 WL 3315285 (D.N.J. Aug. 3, 2017) ("*Cardenas I*"). In the New Jersey action, Spinnaker filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Spinnaker argued that the New Jersey court did not have jurisdiction over it because Spinnaker was not at home and lacked minimum contacts with the forum, either directly or under agency principles. *Id.* at * 4. Spinnaker argued that RSS and RSM were the companies responsible for marketing its timeshares, yet these companies were not agents of Spinnaker for the purposes of jurisdiction. Further, Spinnaker argued that even if RSS and RSM were the agents of Spinnaker, Plaintiff failed to show that either company made the calls in question. In response, Plaintiff argued that New Jersey could exercise jurisdiction over Defendant pursuant to an agency theory "because the subsidiaries conduct business in this District [ New Jersey] on Spinnaker's behalf, there is common ownership, Spinnaker supports its subsidiaries financially, and Spinnaker controls its subsidiaries' affairs." *Id*. at * 4. The New Jersey court allowed the parties to conduct jurisdictional discovery as to whether an agency relationship existed between Spinnaker and RSS and RSM.

The New Jersey court entered an order on August 3, 2017, granting Spinnaker's motion to dismiss for lack of personal jurisdiction. *Cardenas I*, 2017 WL 3315285, at * 5. The New Jersey court applied an agency test and found it could not assert personal jurisdiction over

---

who received at least one additional call from Defendants at least thirty days after requesting that Defendants not call them again.

(Dkt. No. 1 at ¶ 59).

Spinnaker because Plaintiff failed to establish an agency relationship between Spinnaker and RSS and RSM. *Id.* It noted that even if an agency relationship had been established, Plaintiff's complaint "failed to sufficiently allege that RSS and RSM made the unsolicited calls in question, thus invalidating any agency argument." *Id.* The New Jersey court also found that Plaintiff failed to show RSS and RSM made the unsolicited calls alleged in Plaintiff's complaint, which defeated Plaintiff's jurisdictional argument. *Id.* at *4.

In the second action, Plaintiff filed a Complaint in the United States District Court for the District of South Carolina. In the South Carolina action, Spinnaker filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure. *Cardenas v. Spinnaker Resorts, Inc.*, No. CV 9:18-761-BHH, 2019 WL 7761751, at *1 (D.S.C. Mar. 5, 2019) ("*Cardenas II*"). The South Carolina court entered an order on March 5, 2019, granting Spinnaker's motion to dismiss. The South Carolina court found Plaintiff was precluded from alleging RSS and RSM made the alleged phone calls based on the New Jersey court's finding that Plaintiff failed to demonstrate RSS and RSM made the telemarketing calls to Plaintiff. *Cardenas II*, 2019 WL 7761751, at *5 (citing *Cardenas I*, 2017 WL 3315285, at * 4).

Plaintiff filed a motion to reconsider the South Carolina court's March 2019 order. On July 3, 2019, the South Carolina court issued an order granting Plaintiff's motion to reconsider. *Cardenas v. Spinnaker Resorts, Inc*., No. CV 9:18-761-BHH, 2019 WL 7761707, at *2 (D.S.C. July 3, 2019). The court clarified its position to state that Plaintiff was only precluded from asserting Spinnaker itself was directly or vicariously liable for the alleged phone calls made by RSS and RSM based on the New Jersey court's findings. *Id.* at * 2. In addition, the South Carolina court clarified that Plaintiff may be able to state a plausible claim against RSS and RSM because Plaintiff had not previously alleged direct claims against those entities. *Id.* In other

4

words, the South Carolina court clarified that the findings of its prior order only referred to Plaintiff's ability to sue Spinnaker itself because RSS and RSM (along with any other potential unidentified third-party actors) were not parties to the previous New Jersey action. *Id.* at 2-3. The South Carolina court concluded its findings should not have been construed to preclude Plaintiff from pursuing relief against RSS and RSM or other third-party actors.

On March 25, 2020, Defendants filed a 12(b)(6) motion to dismiss Plaintiff's claims on the basis that Plaintiff is collaterally estopped from alleging RSS and RSM made the phone calls as alleged in the Complaint. (Dkt. No. 15). On April 22, 2020, Plaintiff filed a response in opposition and Defendants filed a reply. (Dkt. Nos. 18; 19). Defendants' motion to dismiss is ripe for the Court's review.

## II.     Legal Standard

### A. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). On a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the Court must accept the facts in a light most favorable to the Plaintiff, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* To survive a motion to dismiss, the

5

complaint must provide enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* FED. R. CIV. P. 8(a)(2). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Rule 201

Rule 201 of the Federal Rules of Evidence provides that a court shall take judicial notice of adjudicative facts when requested by a party and supplied within the necessary information and when the judicially noticed fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. "Facts subject to judicial notice may be construed by a court on a motion to dismiss." *Briggs v. Newberry County Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992). When considering a motion to dismiss based on the doctrine of res judicata, a court may take judicial notice of facts from a prior judicial proceeding.[2] *Id.* (citing *Mehlar Corp. v. City of St. Louis, Missouri*, 530 F. Supp. 85 (E.D. Mo. 1981)).

### III. Analysis

The issue before the Court is whether, based on prior court adjudications, Plaintiff is collaterally estopped from alleging RSS and RSM made unsolicited phone calls to Plaintiff and individuals registered on the Do Not Call List, as alleged in the complaint. The doctrine of res

---

[2] The court takes judicial notice of the prior court adjudications in *Cardenas v. Spinnaker Resorts, Inc.*, No. 2:16-2466 (JLL), 2017 WL 3315285 (D.N.J. Aug. 3, 2017), *Cardenas v. Spinnaker Resorts, Inc.*, No. 9:18-cv-00761-BHH (D.S.C. Mar. 5, 2019), *Cardenas v. Spinnaker Resorts, Inc.*, No. 9:18-cv-00761-BHH (D.S.C. July 3, 2019) and considers these on Defendants' motion to dismiss as the accuracy of these sources cannot be reasonably questioned.

judicata embodies two district preclusion concepts: (1) claim preclusion; and (2) issue preclusion (or collateral estoppel). *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). Claim preclusion refers to the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. *Briggs,* 838 F. Supp. at 235. "[C]ollateral estoppel is more narrowly drawn and forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal citations omitted). For collateral estoppel to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.[3] *Id.*

   1. *Identical Issue*

Collateral estoppel requires that the issue sought to be precluded is identical to one previously litigated. In the New Jersey action, the issue before the court was whether the court could assert personal jurisdiction over Spinnaker by imputing the contacts of RSS and RSM to Spinnaker through an agency relationship. The New Jersey court determined that RSS and RSM were not agents of Spinnaker for jurisdictional purposes. *Cardenas I*, 2017 WL 3315285, at * 4–6. The South Carolina court analyzed whether Plaintiff's complaint plausibly stated a claim against Spinnaker directly for violations under the TCPA. The court determined that Plaintiff

---

[3] Plaintiff concedes that element four, requiring that the prior judgment be valid and final, is satisfied. (Dkt. No. 18 at 6–7).

was collaterally estopped from alleging Spinnaker directly or vicariously made the alleged unsolicited phone calls. Neither of the prior actions addressed whether RSS and RSM could be held directly or vicariously liable for a violation under the TCPA for unsolicited phone calls made by a third-party or agent acting on behalf of RSS or RSM. As such, the issues determined in the prior actions are not identical to the issue in the instant case.

### 2. Actually and Necessarily Determined

Collateral estoppel only "treats as final only those issues 'actually and necessarily determined' in the prior suit." *Combs v. Richardson*, 838 F.2d 112, 114 (4th Cir. 1998). The issue of whether RSS and RSM may be held directly or vicariously liable for any calls made on its behalf by any agents or third parties was not actually and necessarily determined in the prior proceedings.

### 3. Critical and Necessary to Judgment

The facts subject to collateral estoppel must be critical and necessary to the judgment in the prior litigation. When describing the scope of the "critical and necessary" criterion, courts have used the alternative word "essential". *In Re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322 (2004); *e.g.*, *Polk v. Montgomery Cty., Md.*, 782 F.2d 1196, 1201 (4th Cir. 1986) ("necessary, material, and essential.") "Where the court in the prior suit has determined two issues, either of which could independently support the result, then neither determination is considered essential to the judgment. Thus, collateral estoppel will not obtain as to either determination. If one of the two determinations is upheld on appeal, however, collateral estoppel can obtain as to that issue. *Ritter v. Mount St. Mary's Coll.*, 814 F.2d 986, 993-4 (4th Cir. 1987) (citing 4 Wright, *Law of Federal Courts* § 100A (1983). The rationale underlying this corollary to the collateral estoppel doctrine is that it "guards against the use of non-essential dicta and

ancillary findings to estop later litigations." *Id.* The doctrine seeks to "further the judicial interest in economical resolution of disputes, although never to the point where a litigant is denied his full and fair opportunity to present his case to a competent fact finder." *Id.* "Non-essential findings should not serve as the basis for collateral estoppel because the litigants might not have concentrated their energies and resources upon the full development and presentation of these issues." *Id*.

Defendants argue that Plaintiff is collaterally estopped from alleging RSM and RSS made the unsolicited phone calls because the New Jersey court previously made a factual determination that Plaintiff failed to show RSS and RSM made such unsolicited calls. (Dkt. No. 15-2 at 4). Defendants argue the New Jersey court's factual finding is a "critical lynchpin" to the New Jersey court's dismissal of Plaintiff's complaint. (*Id.* at 3). In the New Jersey action, Spinnaker filed a 12(b)(2) motion to dismiss for lack of personal jurisdiction. Plaintiff alleged that Spinnaker and/or its agents made multiple unsolicited promotional calls to Plaintiff in violation of the TCPA. *Cardenas I*, 2017 WL 3315285 at * 1. Plaintiff alleged the New Jersey court had personal jurisdiction over Spinnaker because Spinnaker "conducts a significant amount of business in this District, solicits consumers in this District, made and continues to make unsolicited calls in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District." *Id.* Spinnaker argued the New Jersey court did not have personal jurisdiction over it because Spinnaker was not at home and lacked minimum contacts with the forum, either directly or under agency principles. *Id.* at * 4. The New Jersey court ordered the parties to conduct jurisdictional discovery tailored to Spinnaker's relationship with its subsidiaries, RSS and RSM, as to whether the subsidiaries acted as Spinnaker's agent for jurisdictional purposes. *Id.* at 1–2. The New Jersey court ultimately

dismissed Plaintiff's complaint because the court was not satisfied with Plaintiff's argument that an agency relationship existed between Spinnaker and RSS and RSM.

The New Jersey court applied a four-part test to determine if a subsidiary company is acting as the agent of the parent company. The test consisted of: (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and the subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008). The New Jersey court found that elements one, three, and four were not met. *Cardenas I*, 2017 WL 3315285 at * 5. In addition, the court found that element two was satisfied, but was not dispositive as to whether an agency relationship existed. *Id.*

The New Jersey court also held that even if an agency relationship existed, Plaintiff failed to allege that RSS and RSM made the unsolicited phone calls in question thus invalidating any agency argument. *Id.* at 4-5. Further, the New Jersey court explained that even if it could be shown that RSS and RSM were Spinnaker's agents, "Plaintiff failed to show [RSS and RSM] made the unsolicited phone calls alleged in Plaintiff's complaint." *Id.* at * 6. "[Since] Plaintiff's argument for specific personal jurisdiction [was] based on the premise that [RSS and RSM] made telephone calls to Plaintiff and other class members, Plaintiff's failure to show that [RSS and RSM] made such calls defeats its jurisdictional argument. Accordingly, even if [RSS and RSM] are agents of [Spinnaker], the [c]ourt cannot have specific personal jurisdiction over [Spinnaker] without the requisite minimum contacts with the forum". *Id.*

In short, the New Jersey court dismissed Plaintiff's complaint against Spinnaker because the court could not assert personal jurisdiction over Spinnaker based on the theory RSM and RSS were acting as agents of Spinnaker. Alternatively, the court found that even if it could be shown RSS and RSM acted as Spinnaker's agents, Plaintiff failed to allege such in the complaint and failed to show that RSS and RSM made the unsolicited phone calls to establish sufficient minimum contacts with the forum for the court to impute those contacts to Spinnaker. Although the finding that RSS and RSM did not make the phone calls alleged in Plaintiff's complaint supported the court's judgment, it was not critical and necessary to the court's finding that no agency relationship existed between RSS and RSM and Spinnaker because the court found that multiple factors necessary to establish an agency relationship were not established.

### 4. *Full and Fair Opportunity to Litigate*

Collateral estoppel requires that the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. The New Jersey court ordered the parties to conduct jurisdictional discovery tailored to whether RSS and RSM acted as the agents of Spinnaker such that the court could exercise personal jurisdiction over Spinnaker. *Cardenas I*, 2017 WL 3315285 at * 1. During jurisdictional discovery, Plaintiff served subpoenas on RSS and RSM that primarily sought documentation that would establish an agency relationship between RSS and RSM and Spinnaker, and whether RSS and RSM made any unsolicited calls on behalf of Spinnaker. (Dkt. No. 15-5 – 15-9). In their responses to Plaintiff's subpoena requests, RSS and RSM denied making, directing, or authorizing the unsolicited phone calls alleged in Plaintiff's complaint. (Dkt. No. 15-8; 15-9). Yet, there is no evidence Plaintiff previously had the full and fair opportunity to engage in discovery as to

whether RSS and RSM may be held directly or vicariously liable for the actions of third-parties or agents making the unsolicited calls on behalf of these entities.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is **DENIED**. (Dkt. No. 15). **AND IT IS SO ORDERED**.

s/ Richard M. Gergel  
Richard M. Gergel  
United States District Judge

June 26, 2020  
Charleston, South Carolina